No. 12,707.

BRADLEY *v.* ANDREWS.
(14 P. [2d] 1086)

Decided October 3, 1932.

Messrs. PERSHING, NYE, TALLMADGE, BOSWORTH & DICK, Mr. N. A. HUTCHINSON, for plaintiff in error.

No appearance for defendant in error.

*In Department.*

MR. JUSTICE BUTLER delivered the opinion of the court.

CHRISTIAN T. Andrews sued Joseph M. Bradley for an accounting. An accounting was had, and, as a result thereof, the court rendered judgment in favor of Andrews for a sum of money and ordered the transfer to him of a certain number of shares of the stock of an oil syndicate.

The controversy arose over a prospecting, or "grub-stake," contract between the parties. About December 2, 1925, Andrews, one Handy and Bradley made an agreement whereby Bradley, using his knowledge as a mining engineer and geologist, was to examine and report upon the oil and gas possibilities of certain oil fields in Fremont county, and a certain structure in El Paso county; and whereby Andrews and Handy were to pay all of Bradley's expenses in connection with such examinations, and, if Bradley's report thereon was favorable, procure the drilling and exploration of said tracts; the profits to be divided, each to receive one-third. Later, about January 17 or 21, 1926, Handy having withdrawn, the arrangement was continued by Andrews and Bradley, the profits to be divided equally.

In his complaint, Andrews alleges: "That in conformity with said agreement the plaintiff advanced and paid to the defendant from time to time between December 1, 1925, and February 1, 1926, all such sums of money as were required to discharge and pay all of defendant's traveling and living expenses * * * and all other incidental expenses." He alleges, also, that between December 5, 1925, and February 1, 1926, Bradley did "locate, plat and definitely determine and lay out a geological structure containing large and valuable deposits of mineral oil and gas in Fremont county, * * * and did thereafter prepare geological reports and maps relating to said structure and the land embraced therein;" that "during the spring and summer seasons of 1926," Bradley obtained a large number of oil and gas leases in his own name and in the names of others, for his sole use and benefit, and has derived therefrom large profits, which he "wrongfully, fraudulently and unlawfully" retains to the exclusion of Andrews. In his answer, Bradley denies that Andrews advanced or paid the sums of money required to pay Bradley's expenses, and alleges that on or about the first day of February, 1926, Andrews breached the contract by failing to repay to Bradley cer-

tain moneys previously advanced and expended by Bradley for expenses necessarily incurred by him in connection with the field work done pursuant to the contract, and that on February 2, 1926, Bradley elected to and did terminate the contract and served formal notice of such termination upon Andrews. In his replication, Andrews denies that he breached the contract.

Bradley had resided for years in Fremont county, and for years before making the contract in suit was familiar with the geology of the section in the neighborhood of Florence and Canon City. He had discussed the West Florence field with Andrews several times and had recommended it to him as a "likely area," and in 1924, and thereafter up to January, 1926, he repeatedly called the West Florence field to the attention of Andrews. About January 29, both of them went to the South Florence field. They also drove over the West Florence field, after having discussed its possibilities. While they were at Florence on that trip Bradley asked for expense money, "because," Bradley testified, "from my former connection with him I knew it was an old stunt of his to let me go ahead and advance money and then repudiate." Bradley told Andrews that he (Bradley) was out of money and was not going to furnish any money. Bradley testified that Andrews promised to give him money at Florence, but later promised to send him a check when Andrews got to Denver, and that the check would be in Florence not later than Monday morning (February 1). Andrews admitted on the witness stand that he promised to send the check on Monday. No check or money having arrived on Monday, Bradley sent Andrews a telegram Monday night, reading: "Am without funds to carry on operations here unless I advance money, which I will not do. All arrangements between us off from this date. Am leaving for Denver today with car." Andrews received the telegram on February 2, made no protest, and neither paid nor offered to pay any money to Bradley. On February 3 Bradley arrived in Denver and re-

turned Andrews' automobile, which he had been using. Bradley remained in Denver until March 26, 1926, when he returned to Florence and interested one Rogers in the West Florence field. He and Rogers, at an expense of $1,304, spent six or seven months obtaining leases in that field. The leases were executed between May 12 and July 1, 1926. In these leases, and in the profits derived therefrom, Andrews claims an undivided one-half interest.

■ 1. The contract, being of indefinite duration, could be terminated at any time with or without cause. *Lawrence v. Robinson,* 4 Colo. 567; *Lamont v. Reynolds,* 26 Colo. App. 347, 144 Pac. 1131; *Edwards v. Johnson,* 90 S. C. 90, 72 S. E. 638; *Marston v. Gould,* 69 N. Y. 220. In terminating the contract in the manner described Bradley acted within his legal rights.

■ 2. Ordinarily, one who furnishes the supplies or the expense money under a prospecting or "grubstake" contract is not entitled to share in the property unless it was acquired during the life of the contract. *Hollingsworth v. Tufts,* 62 Colo. 256, 162 Pac. 155; *Johnstone v. Robinson,* 16 Fed. 903. And see 3 Lindley, Mines (3d Ed.), §858. Such was not the situation in this case; the leases involved herein were acquired after the termination of the Andrews-Bradley contract.

■ 3. The general rule, however, is subject to an exception as firmly established as the rule itself. If the prospector, during the life of the contract, makes a discovery and conceals the fact from his associate with intent to acquire the property for himself after the contract is terminated, and does so acquire it, a court will award to his associate the latter's contract share or interest. No such situation is presented by the record in the present case. Whatever knowledge or information Bradley acquired, either prior to the making of the contract or during its life, was communicated to Andrews before the contract was terminated. When the contract was terminated, both parties were free to proceed as they saw fit. Bradley availed himself of his opportunity;

Andrews neglected his. Now that Bradley, after an expenditure by him and his new associate of considerable time and money, is reaping the fruits of his industry, Andrews seeks to take away from Bradley a substantial part thereof. He ought not, and under the law he cannot, succeed in this attempt. See *Jennings v. Rickard,* 10 Colo. 395, 15 Pac. 677.

The judgment is reversed, and the cause is remanded with direction to the district court to dismiss the suit.

Mr. Chief Justice Adams and Mr. Justice Moore concur.