## No. 14,198.

### INDEPENDENT LUMBER COMPANY *v.* LEATHERWOOD.
(79 P. [2d] 1052)

Decided February 14, 1938. On rehearing original opinion adhered to June 6, 1938.

Messrs. BOWIE & GROVES, Mr. EDWARD L. WOOD, for plaintiff in error.

Mr. ELAM B. UNDERHILL, Messrs. ADAMS & HECKMAN, for defendant in error.

*En Banc.*

Mr. Justice Young delivered the opinion of the court.

The parties are here in reverse order of their appearance in the district court. Plaintiff in error will be designated as defendant and defendant in error as plaintiff. To a judgment in favor of plaintiff for damages sustained in an automobile collision the defendant prosecutes a writ of error.

The facts as disclosed by the evidence are substantially as follows: The plaintiff, about 9:30 in the morning of October 17, 1935, was driving his Pontiac automobile in an easterly direction along White avenue in the city of Grand Junction. White avenue is thirty six feet in width from curb to curb and intersects Fifth street which runs in a northerly and southerly direction and is fifty feet in width from curb to curb. Fifth street is a stop street. As plaintiff approached the intersection he stopped his car at the stop signal and looked to the south where he saw defendant's one and a half ton delivery truck approaching the intersection along Fifth street traveling in a northerly direction at a speed of twenty to twenty-five miles per hour. Plaintiff testified that when he first saw this truck it was at a point four hundred and fifty to four hundred and seventy feet south of the intersection. He further testified that after stopping his car, he thought he had time to "make it," threw his gears into low and proceeded into the intersection without again looking to the south, intending to make a left hand turn around the manhole in the center of the intersection and to proceed in a northerly direction along Fifth avenue. Just after he had shifted his gears from low to intermediate and when his car was pointing in a northeasterly direction with the rear end of it a few feet east and south of the manhole in the center of the intersection the defendant's truck collided with the rear right corner of his car turning it around and causing it to proceed easterly out of the inter-

section into White avenue where it turned over on its left side facing in a southwesterly direction, plaintiff being severely injured. The truck driver testified on direct examination that he did not see the plaintiff's car until the front end of his truck was approximately eighteen feet from it, and on cross-examination he fixed the distance as about six or eight feet. He further stated that he immediately applied his brakes—which were in good condition—with sufficient force that the front and the dual rear wheels of the truck skidded on the pavement a distance of thirty-six inches. These skid marks appear in pictures introduced in evidence as exhibits, which were taken immediately after the accident, and they indicate that the truck made no diversion from a direct northerly course. The testimony of a witness, who was standing nearby and saw the accident, was that plaintiff's car at the time of impact was traveling about twelve miles per hour, and there was further testimony by the driver of defendant's truck that the speed of the truck at the time of impact had been reduced from about twenty to twelve miles per hour. At the time of the collision both streets were unobstructed by traffic.

The fact situation involved here is that two cars were proceeding into an intersection substantially at right angles on such courses and at such speeds that unless one or the other altered its course or speed a collision was inevitable. A city ordinance gave the right of way to the defendant's truck approaching the intersection from plaintiff's right, and defendant charges that plaintiff was negligent in failing to keep a lookout, in not yielding the right of way to defendant, and that, failing in these respects, he contributed to his own injury. The plaintiff denies that he was negligent, but says that if he was, the rule of last clear chance permits him to recover notwithstanding such negligence.

■ ■ Clearly plaintiff bases his right of recovery on injuries negligently inflicted on him by defendant. A failure to exercise ordinary care for another's safety

which operates as the proximate cause of injury to the latter, is the legal theory on which recovery is permitted in negligence cases. Such a case, in which the rule of last clear chance is invoked, does not cease thereby to be one in which failure to exercise ordinary care, as the proximate cause of injury, must be found in order to entitle plaintiff to recover. The rule of last clear chance is applied for the purpose of determining the legal proximate cause of the injury.

█ █ We think the evidence here discloses negligence on the part of both the driver of defendant's truck and the plaintiff, in that each failed to keep a proper lookout as he proceeded toward and into the intersection. The invoking of the last clear chance rule requires an examination of the evidence to determine whether the situation created by the plaintiff's contributory negligence, which situation it is established beyond peradventure was one of peril, was one of which ordinary care on the part of the defendant's driver would have made him cognizant *in time* to have avoided injury to the plaintiff by the use of the means available at that time.

The rule of last clear chance is one to be applied for the analysis or resolution of an extended fact situation into at least two fact situations one of which includes the acts and omissions of the plaintiff that create the condition under which an injury occurs and thus becomes merely a remote cause of it; the other including the acts and omissions of the parties subsequent to the creation of the situation, from which the proximate cause of the injury is to be ascertained. The object of the rule is to determine the proximate cause of an injury to plaintiff which occurred while he was in a situation which he admits was created, or at least admits that there is evidence justifying a finding that it was created, by his failure to exercise ordinary care for his own safety, but which injury he claims would not have occurred but for failure of the driver of defendant's truck to exercise ordinary care after the situation was created. Defendant charges, and

in asserting the applicability of the last clear chance rule plaintiff admits the necessary prerequisite to its application, that there is evidence that plaintiff was guilty of failing to exercise ordinary care for his own safety to the extent of creating a condition of peril such that if the defendant's driver, in the exercise of subsequent objective care for plaintiff's safety, did not alter his course or speed, injury would occur. The plaintiff's peril came into existence at the moment his car passed a point beyond which he was unable to change his course or speed to prevent a collision. When plaintiff passed that point he had taken the right of way; he had created a dangerous situation from which he could not extricate himself; and he had to remain in danger until his car covered the space within which he could not change his course or speed to avoid the collision plus the width of defendant's truck, some six feet, plus the length of plaintiffs' car, fourteen feet six inches, according to the evidence. During the time he was traveling such distance nothing plaintiff could do, whether conscious or unconscious of his situation would prevent a collision. During such time his safety depended solely upon the action of the driver of defendant's truck. During such time there was objective evidence of his position of danger. Defendant's driver says he did not see plaintiff progressing across the westerly half of Fifth avenue, which at the time was free of all obstructions. He did not see him until the front of his truck was within six or eight feet of plaintiff's car, the front end of which was immediately in front of defendant's truck. Even so, the driver of the truck applied his brakes and skidded his tires thirty-six inches, within that short distance reducing his speed from twenty to twelve miles an hour at the moment of impact and stopped his car, as he testified, within eighteen inches after the collision. Another moment of brake application would have stopped the truck or decreased its speed sufficiently so that plaintiff's car would have passed out of the zone of danger. In this day the use of automobiles is so general that it must be known to an

experienced operator, which the driver of defendant's truck was, that a moving car cannot be stopped instantly and that one crossing its course comes into a zone of danger from which he cannot escape before actually intersecting its path. Defendant's driver testified that the street was clear; that although there was nothing to obstruct his vision he did not see plaintiff until the front end of his car was immediately in front of his truck. In the light of such a situation we think the jury clearly was warranted in finding that defendant's driver could have discovered plaintiff's position of inescapable peril and have avoided injuring him by the exercise of ordinary care in stopping or turning his truck.

Defendant sets forth in his brief sections 479 and 480 of the Restatement of the Law of Torts which are as follows:

"§479. Defendant's Last Clear Chance.

"A plaintiff who has negligently subjected himself to a risk of harm from the defendant's subsequent negligence may recover for harm caused thereby if, immediately preceding the harm,

"(a) the plaintiff is unable to avoid it by the exercise of reasonable vigilance and care, and

"(b) the defendant

"(i) knows of the plaintiff's situation and realizes the helpless peril involved therein; or

"(ii) knows of the plaintiff's situation and has reason to realize the peril involved therein; or

"(iii) would have discovered the plaintiff's situation and thus had reason to realize the plaintiff's helpless peril had he exercised the vigilance which it was his duty to the plaintiff to exercise, and

"(c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff."

"§480. Last Clear Chance; Negligently Inattentive Plaintiff.

"A plaintiff who, by the exercise of reasonable vigilance could have observed the danger created by the de-

fendant's negligence in time to have avoided harm therefrom, may recover if, but only if, the defendant

"(a) knew of the plaintiff's situation, and

"(b) realized or had reason to realize that the plaintiff was inattentive and therefore unlikely to discover his peril in time to avoid the harm, and

"(c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff."

Section 479 correctly states the rule of last clear chance as applied in Colorado to situations in which a plaintiff's failure to exercise ordinary care for his own safety brings him into a position of peril from which he cannot extricate himself, but one such that ordinary care on the part of a defendant, after the dangerous situation arises, would save plaintiff from harm. Our analysis of the fact situation here involved we think clearly shows that the present case is within the rule as stated in section 479. Section 480 limits its application to cases of discovered peril only, which is not the rule in Colorado. The following cases among others are to this effect. *Denver and Rio Grande R. R. Co. v. Buffehr,* 30 Colo. 27, 69 Pac. 582; *Colorado & So. R. R. Co. v. Western L. & P. Co.,* 73 Colo. 107, 214 Pac. 30; *Freeman v. Schulz,* 81 Colo. 535, 256 Pac. 631; *Wendelin v. Ross,* 99 Colo. 365, 62 P. (2d) 1157.

*Killian v. McCourt,* 69 Colo. 455, 194 Pac. 936, is relied upon as authority for the proposition that the rule of last clear chance does not apply to this case. Plaintiff in that case was a pedestrian. The court in commenting on the evidence used the following significant language: "The sole point here necessary to determine is her right to go to the jury under the doctrine of the 'last clear chance,' it being contended that there is evidence that defendant could, by the exercise of reasonable care and diligence, have stopped his car after plaintiff's peril was apparent. The basis for this contention is defendant's estimate that he was approximately twenty-five feet from plaintiff when he first saw her, and the testimony of a mechanic

that the car could, under certain ideal conditions not here established, have been stopped in approximately ten feet."

In the instant case there is no room for speculation as to the distance within which the car could be stopped. The truck driver says he did not see plaintiff's car until he was six or eight feet from it, that he applied his brakes, skidded his tires thirty-six inches, struck plaintiff's car, and stopped within eighteen inches after the impact. In the McCourt case the court found that the evidence as to the interval of space and time within which the defendant had to use the means available to him was not such that reasonable men could find that a failure to avoid the accident was due to the fact that he did not exercise ordinary care. The question of undiscovered peril—whether the defendant in the exercise of ordinary care should have discovered plaintiff's position of peril when he was farther away than twenty-five feet—is not discussed in that case nor shown to have been urged by plaintiff. Such lack of care on the part of defendant's driver is strenuously urged by the plaintiff in support of his position in the case before us, and the clear and unobstructed condition of the street for a long distance north and south of the point of accident is relied upon as supporting his contention. The difference in the fact situations involved distinguishes the McCourt case from the one here under consideration.

The judgment is affirmed.

MR. JUSTICE BOUCK and MR. JUSTICE HOLLAND dissent.