513 P.2d 469 (1973)
Thomas Christian BURNS, a minor, by his next friend, Thomas W. Burns, et al., Plaintiffs-Appellants,
v.
Carole Dolores OTTATI, Defendant-Appellee.
No. 72-250.
Colorado Court of Appeals, Div. I.
May 22, 1973.
Rehearing Denied June 12, 1973.
Certiorari Denied September 10, 1973.
*470 J. W. Karford, Englewood, for plaintiffs-appellants.
Robert W. Hansen, Denver, for defendant-appellee.
Not Selected for Official Publication.
*471 ENOCH, Judge.
This is an action in tort that was initiated by Thomas Christian Burns (Chris), a minor, by his next friend, and by Thomas W. Burns and Mildred L. Burns, Chris's father and mother, all plaintiffs-appellants, against Carole Dolores Ottati, defendant-appellee, for damages resulting from an automobile-pedestrian accident. Following a trial to a jury the trial court entered judgment on a verdict in favor of Mrs. Ottati. The plaintiffs appeal. We affirm.
The accident occurred on East Arapahoe Road in Arapahoe County. At the point of the accident, East Arapahoe Road consists of three lanes running east and three west, bounded on the north by single family residences and on the south by a shopping center. On October 27, 1970, Chris, returning home from school, attempted to cross East Arapahoe Road at approximately 5:30 p.m. at a point where there was no cross-walk. Two companions successfully traversed the six lanes some distance ahead of Chris. Chris crossed the three westbound lanes and the innermost of the three eastbound lanes. After entering the center eastbound lane, Chris reversed his direction and returned to the innermost eastbound lane. Pausing momentarily, Chris reversed his direction again and crossed back into the center eastbound lane where he was struck by a car driven by Mrs. Ottati. The evidence indicated that Mrs. Ottati saw Chris prior to the accident, applied her brakes, and stopped her car just at the point of impact. There were 57 feet of skid marks prior to the point of impact.
The Burnses allege that the court erred in not giving an instruction on last clear chance. We do not agree.
In Independent Lumber Co. v. Leatherwood, 102 Colo. 460, 79 P.2d 1052, our Supreme Court spelled out the rule of last clear chance as follows:
"`A plaintiff who has negligently subjected himself to a risk of harm from the defendant's subsequent negligence may recover for harm caused thereby if, immediately preceding the harm,
"`(a) the plaintiff is unable to avoid it by the exercise of reasonable vigilance and care, and
"`(b) the defendant
"`(i) knows of the plaintiff's situation and realizes the helpless peril involved therein; or
"`(ii) knows of the plaintiff's situation and has reason to realize the peril involved therein; or
"`(iii) would have discovered the plaintiff's situation and thus had reason to realize the plaintiff's helpless peril had he exercised the vigilance which it was his duty to the plaintiff to exercise, and
"`(c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff.'"
The objective of the rule is to assist in determining the proximate cause of the accident and resulting injury. For the rule of last clear chance to be applicable, the plaintiff's negligent action must have placed him in a zone of danger, but the resulting damages would not have occurred but for the failure of the defendant to exercise ordinary care after the situation was created. Also, the plaintiff must have been in peril after the situation was created such that, regardless of being conscious or unconscious of his situation, he was powerless to extricate himself from the danger. Independent Lumber Co., supra.
A further element that must be satisfied before an instruction on last clear chance can be given is that there must have been more than a mere possibility of avoiding an accident; there must have been a clear chance to do so. Burton v. McDermott, 148 Colo. 328, 365 P.2d 891.
Although the rule is normally not articulated as such, it can be said that Colorado follows the "unconscious" last clear chance standard as contended by the Burnses. See W. Prosser, Torts § 66, (4th ed.). In its discussion of the rule, the controlling case of Independent Lumber Co., supra, includes *472 the situation where the defendant should have discovered the plaintiff's position of peril in sufficient time so that by exercising reasonable care, the defendant could have avoided the injuries to the plaintiff. See also Lambrecht v. Archibald, 119 Colo. 356, 203 P.2d 897; Ankeny v. Talbot, 126 Colo. 313, 250 P.2d 1019; Reed v. Barlow, 153 Colo. 451, 386 P.2d 979.
Though the doctrine of last clear chance may be applicable when a perilous situation is created through the negligence of both plaintiff and defendant, it is necessary that there be a time after the joint creation of the perilous situation when the defendant could, but the plaintiff could not, by reasonable actions, prevent the accident. Reed v. Barlow, supra. Thus, the plaintiff must have been in a state of helpless peril under the Independent Lumber Co., supra, standards at the time the defendant should have been able reasonably to prevent the accident. Woods v. Siegrist, 112 Colo. 257, 149 P.2d 241.
Even with the application of the unconscious last clear chance doctrine, the facts of this case would not justify the giving of an instruction on last clear chance. There was no evidence that just prior to the accident Chris was in a position of helpless or inextricable peril. This is not to say that he was not in a position of danger. Anyone who attempts to cross a busy, six-lane thoroughfare at a point other than at an authorized crosswalk, places himself in an unsafe situation. The fact that Chris acted in an unsafe and dangerous manner does not, in and of itself, place him in a position of helpless peril. Speculation or conjecture by counsel as to the effect of the setting sun on the boy's vision and as to the ability of a nine-year-old to realize the danger of the situation cannot suffice for the lack of evidence.
In Dennis v. Johnston, 136 Colo. 357, 317 P.2d 890, a pedestrian sued a motorist for damages for personal injuries, and the giving of the last clear chance instruction was reversed on appeal. The plaintiff in that case was struck by a fender of defendant's car as he attempted to cross the last lane of a four-lane street. The Supreme Court noted that had plaintiff stopped at any time short of the last step, plaintiff would not have been hit. Therefore, at no time until the point of impact was plaintiff in inextricable peril. The court further held that plaintiff must be at the mercy of defendant's negligence subsequent to the establishment of a position of inextricable peril. The result in the case at hand must be the same as in Dennis, since up to the moment of impact, the injured plaintiffs in both cases were only steps away from safety.
For future reference we call attention to the fact that by virtue of the passage of the comparative negligence statute, 1971 Perm.Supp., C.R.S.1963, 41-2-14, the last clear chance instruction is not applicable in actions arising out of events occurring on or after July 1, 1971.
The Burnses also allege that the court erred in not allowing their expert accident reconstruction witness to complete his testimony. The Burnses contend that once such a witness is qualified and admitted as an expert, the trial court could not then restrict his testimony. We disagree.
An opinion by an expert cannot be based on facts not in evidence. Liber v. Flor, 160 Colo. 7, 415 P.2d 332. The Burnses' counsel proposed to ask the expert his opinion as to Mrs. Ottati's visibility of Chris. The hypothetical question as framed required the expert to assume facts which were not in evidence. The expert would have been required to speculate as to Chris's height and the color of his clothing, which facts were not in evidence. Average braking distances referred to in the question were taken from a document which was neither in evidence nor noticed judicially by the trial court. There were also inadequate facts concerning the relative speeds of the automobile of Mrs. Ottati and the vehicle of the key witness who observed the boy crossing the roadway but *473 did not see the impact. Therefore, it is evident that the conclusion regarding visibility would be speculative beyond a standard of admissibility. The trial court ruled correctly in prohibiting the expert from rendering an opinion on the basis of the hypothetical question in the form in which it was asked.
Judgment affirmed.
PIERCE and SMITH, JJ., concur.